COOKS, J.,
Dissents.
JQThe majority finds “it appears the jury rendered a compromise verdict.” This court recently addressed compromise verdicts in State of Louisiana v. Daryl W. Johnson, 09-231 (La.App. 3 Cir. 11/04/09), 21 So.3d 1159 wherein this court stated:
In State v. Hopkins, 96-1063, p. 3 (La.App. 3 Cir. 3/5/97), 692 So.2d 538, 539-40, this court explained in pertinent part: ‘Louisiana juries have the power to enter compromise verdicts, where the responsive verdict is legislatively authorized ... Where the defendant acquiesces in the submission of responsive verdicts. The evidence must support either the responsive verdict returned or the crime charged.’ State v. Porter, 93-1106 (La.7/5/94); 639 So.2d 1137.
The jury did not find defendant guilty of the crime charged. The verdict was not a compromise verdict as the majority assumes. Instead, the jury returned a responsive verdict of indecent behavior with a juvenile. This offense, a violation of La. R.S 14:81, is a lesser and included offense of aggravated incest, and was listed in the jury charges as a possible responsive verdict. Defendant did not object to the jury charge of this possible, legislatively authorized, responsive verdict. Thus, the evidence must support either a conviction based on La. R.S. 14:81, the responsive verdict, or a conviction based on the original charge, La. R.S. 14:78.1, aggravated incest. I believe the evidence is insufficient to support a conviction based on either charge.
|2A conviction which is based upon insufficient evidence cannot stand as such violates constitutional due process of law. See U.S. Const. Amend. XIV; and La. Const. Art. I, Sect. 2. When reviewing the sufficiency of the evidence to support a conviction, we must follow the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. Art. 821(B). Under the Jackson standard “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984). As our courts have held “In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt.” State v. Gaspard, 02-1040 (La.App. 3 Cir. 3/5/2003), 841 So.2d 1021, 1023. La. R.S. 14:78.1, the offense with which Defendant was originally charged, states in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
*1200 (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both. (Emphasis added).
|sThe test for determining whether La. R.S. 14:81 is a lesser and included offense of La. R.S. 14:78.1 was articulated by the Louisiana Supreme Court in State v. Simmons, 422 So.2d 138, 142 (La.1982).
[Wjhether the definition of the greater offense necessarily includes all of the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.
Louisiana Revised Statute 14:81 provides in pertinent part
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense; or
(2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
(Emphasis added)
A simple reading of the two statutes clearly indicates that indecent behavior with a juvenile is a lesser and included offense of the crime originally charged and is in fact one of the enumerated offenses referenced in La. R.S. 14:78.1.
The only evidence presented at trial to prove defendant committed the lesser responsive offense of indecent behavior with a juvenile consisted of the following: (1) S.M.’s taped statement at Stuller Place; (2) her trial testimony regarding an alleged touching when she was a baby; and (3) the mother and her friends’s testimony regarding what they claim they observed on defendant’s laptop computer screen. I believe this evidence, when considered in a light most favorable to the prosecution, J^was not sufficient to convince a rational trier of fact that all of the elements of an offense under La. R.S. 14:81 A.(l) was proved beyond a reasonable doubt.
At the time of trial S.M. was one month short of her tenth birthday. She testified she knew only one alleged incident of improper touching occurred because JoAnn Stallings told her. S.M.’s recollection of this incident, where her step father allegedly touched her private parts, was based entirely on information provided by a third party who did not see anything and indeed was not anywhere around at the time.
Moreover, a review of S.M.’s taped interview taken at Stuller Place prior to trial, introduced as evidence at trial, re *1201 veals S.M.’s account of multiple incidents was internally inconsistent and contradictory to her trial court recollection of only a single incident. At the outset of the interview at Stuller Place, S.M. remarked she did not know if her step father touched her “until a doctor finds out.” She then stated defendant only touched her in her private area if she was taking a bath, and that he only touched her in that area once. But later she described several incidents: one when she was taking a bath in her bathroom; another where defendant showed her “it” meaning his private part; and a third when he touched her “boobies” but, she said, he really didn’t know he had done so because he was wiping shampoo off of her while helping her bathe as a small child. She recalled her mother touching her “boobies” while bathing her, and touching her butt, telling her she had a “bony butt.” She made no distinction between the behavior of her mother and that of defendant. She described the third episode with defendant as occurring when she was in the tub and defendant was outside the tub with all of his clothes on. However, she stated earlier defendant never gave her a bath, and that only her mother bathed her. She also described a second bathing episode, when she was a small child, in which she says |fiwhile defendant was giving her a bath, shampoo fell on her private area and he was trying to get the shampoo off of her. She stated his clothes were on during this episode and she was in the tub. She said this episode occurred in his bathroom despite having previously stated she was only given baths in her bathroom.
After describing these episodes, she stated there was no other time that defendant touched her in her private area. However, later she described three more incidents: once when he touched her in her private area while his pants were down; second in his office at home when he started touching her; and third when defendant was fussing with her about chewing gum they started “fighting” and rolled down the stairs and he tried to touch her. She said that during the third episode she pushed him away and told him not to touch her anymore and then said she “nearly died laughing.” She also stated in the interview that defendant had once tried to put his mouth on her privates.
She never mentioned this, nor any of these other episodes at trial. At trial she testified defendant only touched her privates once when she was a “baby” and that this occurred during a bathing episode in her bathroom. S.M. testified she knew this happened because “aunt JoAnn” told her, but during her interview at Stuller Place, she told the interviewer that JoAnn’s minor son Robert told her that her step father touched her. B.L. testified Robert told his mother that S.M. had confided in him about defendant touching her private area and Stallings related this information to B.L. After returning from the lunch break at trial, S.M. stated that she did not remember anything she said before the lunch break. When she finished her testimony at trial S.M. asked if she could sing a song for everyone and she was allowed to sing a short verse asking for someone to love her. S.M.’s testimony is so equivocal concerning the alleged incidents I believe one cannot ascribe sufficient weight to her |6multiple accounts to support defendant’s conviction for indecent behavior with a juvenile under La. R.S. 14:81 A.(l) nor to the offense charged.
I also believe the testimony of B.L. and Stallings is insufficient to support a conviction under La. R.S. 14:81 A.(2) or the offense charged. These witnesses allegedly saw pornographic video on defendant’s laptop computer while S.M. was seated on his lap. As to this alleged episode there is *1202 no contention and no evidence that defendant inappropriately touched S.M. in any manner during the alleged incident.
Even if the act of watching pornography on defendant’s laptop computer with his minor step-child sitting on his lap occurred in the manner alleged, such would not constitute a “lewd and lascivious act” as defined in La. R.S. 14:81(A)(1) and therefore cannot constitute a violation of that statutory provision nor of the offense charged. In State v. Gaspard, 841 So.2d at 1024-1025, this court reversed a conviction for attempted indecent behavior with a juvenile based upon the viewing of pornographic film by the defendant and his minor son. In Gaspard, the defendant showed pornographic movies to his minor son claiming he did so as some sort of right of passage for his son and not for any sexual gratification for himself. We explained in Gaspard,
At this point in the Jackson analysis, there is a clear problem in the State’s case. The only acts the State relies on in proving the crime charged consisted of Defendant’s showing movies and printed materials to V.G. Nothing in the record indicates Defendant touched, or tried to touch, the boy or himself. There is no suggestion of nudity or physical exposure of any kind by either of them. The evidence does not show Defendant suggested they should engage in any sexual acts. As already mentioned, the State relied upon the act of showing the movies in its trial argument, and repeats it on appeal.
In State v. Louviere, 602 So.2d 1042 (La.App. 4 Cir.1992), writ denied, 610 So.2d 796 (La.1993), also an attempted indecent behavior case, the court explained:
|7The only act alleged was the attempted “french kiss” of the two young victims. To determine whether the trier of fact rationally concluded that this act was “lewd or lascivious,” or an act tending directly toward a lewd or lascivious act, we must first consider how these terms are defined. According to a recent decision of this court,
[a] lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner.
State v. Rollins, 581 So.2d 379, 382 (La.App. 4th Cir.1991) (citing State v. Holstead, 354 So.2d 493 (La.1977); State v. Prejean, 216 La. 1072, 45 So.2d 627 (1950).) In State v. Saibold, 213 La. 415, 34 So.2d 909, 911 (La.1948), the Louisiana Supreme Court, in concluding that the meaning of the terms was sufficiently clear when used together, stated that lewd or lascivious behavior “connotes actions or gestures of a lustful and lecherous nature.” Furthermore, “to settle any possible doubt,” that court directed attention to the Reporter’s Comment to § 14:81, which specifies that the purpose of this section prohibiting indecent behavior with a juvenile is to prohibit behavior that falls short of sexual intercourse carried on with young children as well as indecent sexual displays in their presence.
In addition, a review of reported cases of prosecutions under § 14:81 is illustrative of the type of conduct intended to be proscribed. Indecent behavior with a juvenile in which kissing has occurred has uniformly involved more. In State v. Boutte, 384 So.2d 773 (La.1980), the defendant was alleged to have stuck his tongue into the mouth of a four (4) year old *1203 neighbor. In addition, however, he removed the child’s clothing, laid on top of her, and rubbed her genitals. While the defendant in State v. Jacob, 461 So.2d 633 (La.App. 1st Cir.1984), did repeatedly kiss a thirteen (13) year old boy, he also pulled the boy on top of him in bed and fondled him during an overnight stay. And, this court found indecent behavior with a juvenile to have occurred when the defendant french kissed two young boys and also indulged in inappropriate body contact, all over a protracted period. State v. Rollins, 581 So.2d 379 (La.App. 4th Cir.1991). It appears then that a kiss is proscribed behavior under § 14:81 when it is repeated or accompanied by other acts that seem more likely to excite lust and to deprave morals, generally genital contact.
| Jn view of the definition, the stated purpose of the criminal statute, and our review of prior jurisprudence involving the statute, it would be difficult for the rational trier of fact to conclude that the testimony concerning a “bad kiss” proved the occurrence of a lewd and lascivious act. Furthermore, there was no indication that any other action was planned which, together with the kiss, would bring Lou-viere’s conduct within the ambit of the statutory prohibition. Without genital contact or any other obscene or indecent act or repeated occurrence, these kisses fall short of the statutory and judicial requirements of the crime.
Id. at 1044-1045.
The court reversed the defendant’s conviction.
We recognize Louviere is not on all fours with the present case. In Louvi-ere, there was an “act,” but one that was not “lewd and lascivious.” In this case,
we find the conduct at issue does not even qualify as an “act” contemplated by the statute. However, assuming it was such an “act,” Defendant’s watching or showing the videos to his son was clearly not “lewd and lascivious” under Louviere. Further, as required by La. R.S. 14:81, there was no evidence Defendant did anything “upon the person” of Y.G. and Defendant did not participate in any lewd acts “in the presence of” V.G. Arguably, the actions depicted on the videos were “lewd and lascivious,” but Defendant was not a participant in those actions.
Considering the discussion and the result in Louviere, it seems clear that the conduct at issue falls short of the conduct deemed criminal in La. R.S. 14:81. If “french kissing” does not qualify as attempted indecent behavior with a juvenile, we cannot say watching sexually-explicit videos qualifies. Regardless of how distasteful and morally debased Defendant’s conduct was, the statute he was charged with violating required certain elements which are not present in this case. While the criminal code provides other offenses which may fit the acts of the Defendant herein, we are unable to speculate on those and must find him not guilty of the crime charged.
Id. at 1024-26. (Emphasis added).
Under our holding in Gaspard, and the cases relied on therein, the alleged incident involving Defendant’s watching pornography while S.M. sat on his lap does not satisfy the elements of La. R.S. 14:81(A)(1).
Likewise, the Defendant’s alleged conduct regarding the alleged viewing of | ^pornographic video on his laptop with S.M. present does not satisfy the elements of La. R.S. 14:81(A)(2). In 2006 the legislature added Section (A)(2), quoted above, *1204 proscribing the electronic transmission of textual or visual materials which are lewd and lascivious “to any person reasonably believed to be younger than seventeen” and at least two years younger than the offender. I have found no jurisprudence interpreting La. R.S. 14:81(A)(2) regarding its applicability. However, a review of the legislative history of this statutory provision, and the companion statutory provision found in La. R.S. 14:81(C)(2), demonstrates that the wording of the provision is intended to apply to Internet predators and Internet crime involving the transmission of “lewd or lascivious” conduct, images or text to any person proscribed by the statute. La. R.S. 14:81(0(2) states:
“Electronic visual communication” means the communication of a visual image made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.
In light of these provisions, I do not believe Defendant’s actions qualify as “transmission” of lewd and lascivious visual materials to a minor. The legislative history of these provisions shows that the initial form of the relevant bill, HB 1125 of the 2006 Regular Session, focused on Internet crime. The chief modification proposed in the initial bill was the addition of language regarding whether an offender “reasonably believed” that a victim was underage. Such language is especially applicable in situations, such as Internet contact, in which an offender and victim are not face-to-face. Further, review of the comments at the hearing on pertinent proceedings of the House Committee on the Administration of Criminal Justice, which discussed HB 1125, held on April 20, 2006, clearly show the provision was directed at Internet predators. Additionally, as the amendments to the original 110bill eliminated a portion that would have defined “lewd and lascivious,” the jurisprudential definition articulated by this court in Gaspard and Louviere, was not altered.
There is no evidence in this case, nor has the state alleged, that Defendant was engaged in any “acts” with S.M. during the episode in which she allegedly viewed pornographic video while seated on Defendant’s lap. Additionally, the state’s witnesses admit it was entirely possible that what they caught a glimpse of from outside the front door might even have been a pop-up on the computer not pulled up by the Defendant intentionally. S.M.’s testimony about the alleged incident contradicts B.L. and Stallings’ account. B.L. and Stallings testified they could see the pornographic images on defendant’s laptop computer through the sidelights at the front door but S.M. testified that the door to the room was closed and that B.L. had to open the door to enter the room.
While the State introduced evidence that there was pornographic material on the Defendant’s computer, no one at trial could point to specific material allegedly viewed by S.M. during the incident in question. Here, as in Gaspard, during the alleged incident with the laptop computer, there is no allegation nor evidence Defendant touched himself or S.M.; there is no evidence or allegation of any nudity or physical exposure of any kind by either Defendant or S.M.; and there is no evidence or allegation that Defendant suggested he and S.M. should engage in any sexual acts. I believe that under these facts, the jury erred as a matter of law in finding Defendant guilty of indecent behavior with a juvenile under the provisions of La. R.S. 14:81 (A)(2).
The majority admits in its discussion of the trial court’s error in sentencing that *1205 the only evidence that Defendant ever inappropriately touched the victim at some | nunknown time in the distant past is the young victim’s testimony that it happened when she was “a baby.” The victim gives no clue as to what age she is referring to. I reiterate what I pointed out above, the victim testified the only way she “knows” such an event occurred when she was a baby was because her aunt JoAnn told her it happened. This is entirely insufficient to prove beyond a reasonable doubt that Defendant ever inappropriately touched the victim. The majority concludes that this episode “likely occurred before the effective date of the amendment in October of 2006.” This conclusion underscores the insufficiency of this “evidence” to support a conviction on either the original charge or the responsive verdict.
For the reasons as stated above I must respectfully dissent.