669 So.2d 654 (1996)
STATE of Louisiana
v.
Randall Keith STURDIVANT.
No. 27680-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
Rehearing Denied March 28, 1996.
*655 Peter Edwards, Monroe, for appellant.
*656 Richard Ieyoub, Attorney General, Baton Rouge, Jerry L. Jones, District Attorney, H. Stephens Winters, Asst. District Attorney, Monroe, for appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Randall Keith Sturdivant, was charged by bill of information with the crime of indecent behavior with a juvenile, a violation of LSA-R.S. 14:81. A jury found the defendant guilty as charged. The trial court originally sentenced the defendant to serve seven years at hard labor, but vacated that sentence after defendant was adjudicated a third felony offender. Pursuant to LSA-R.S. 15:529.1, the trial court resentenced the defendant to serve fourteen years at hard labor, without benefit of parole, probation or suspension of sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
On March 21, 1994, the defendant, Randall Sturdivant, entered the Ouachita Parish Junior High School in Monroe, Louisiana. He informed the school secretary, Ms. Terri McDuffey, that he was interested in sending his children to the school and asked for permission to tour the building. The testimony at trial revealed that defendant's children were not old enough to attend junior high school at the time of the incident. The school principal and secretary instructed the thirteen-year-old victim, who was an office aide, to take the defendant on a tour of the school.
During the course of the tour, the defendant began asking the victim sexually suggestive questions, such as whether she had ever been fondled or molested and whether she had ever had sex with a boy. The defendant persisted in speaking about sexually related topics, telling the victim that he was a student at Northeast Louisiana University (NLU), and had written a paper on the molestation of young girls. However, the state and defense counsel stipulated at trial that the defendant was never a student at NLU. Toward the end of the tour, the defendant asked the victim to show him the empty auditorium and the outside playground area, but she refused.
The defendant then told the victim that he needed to stop and get a drink from the water fountain. The victim testified that as she stood with her back to the defendant, he walked up behind her, thrust his arms under her arms and attempted to grab her breasts. The victim stated that she stepped away from the defendant, who then placed his hands on her buttocks and "lifted up and kind of rubbed." Defendant told her, "Now you know what I mean by being fondled." The defendant left the school building and the victim returned to the office, where she reported the incident to Ms. McDuffey, who contacted the Monroe Police Department. Detective Larry Linson investigated the incident and eventually identified the defendant as the suspect. Detective Linson assembled a photographic line-up, from which the victim, the secretary and a teacher all identified defendant as the individual who had entered the school.
Prior to trial, the state filed a motion for a Prieur hearing to determine the admissibility of evidence concerning prior sex-related offenses allegedly committed by the defendant. The trial court denied the state's motion. The state applied to this court for a supervisory writ of review, and we directed the trial court to hold a Prieur hearing. State v. Sturdivant, 26,923-KW (La.App.2d Cir. 8/12/94). One incident involved B.C., a six year old girl. The other incident involved J.H., a four year old girl. The trial court held a Prieur hearing and ruled that only one incident was admissible. Both the state and defendant applied for writs of review. Upon review of the matter, this court upheld the trial court's ruling that the evidence pertaining to B.C. was admissible to prove intent and guilty knowledge. This court also granted the state's writ application because the offered evidence concerning J.H. was relevant, pertinent to a material fact in issue and its probative value outweighed any prejudicial effect. State v. Sturdivant, 27,034-35-KW (La.App.2d Cir. 9/9/94).
*657 After a trial, the jury convicted defendant of indecent behavior with a juvenile. Subsequently, defendant was adjudicated an habitual offender, and was sentenced to serve fourteen years at hard labor, without benefit of probation or parole. The trial court denied defendant's motion for reconsideration of sentence. The defendant appeals.

DISCUSSION

Evidence of Other Crimes
The defendant argues that the trial court erred in admitting the testimony of two juvenile female victims as evidence of prior sex-related offenses committed by defendant. He contends that any probative value of the evidence was clearly outweighed by its prejudicial effect.
LSA-C.E. Art. 404B(1) provides that evidence of other crimes or acts may be admissible as proof of motive, intent, knowledge, identity and absence of mistake or accident. The rationale behind excluding other crimes evidence is to ensure that the defendant will not be presumed guilty of the instant charge because he committed the past offenses or because he is of a general criminal character. State v. Driggers, 554 So.2d 720 (La.App.2d Cir.1989). For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant, demonstrate that the other acts satisfy one of the requirements listed in Art. 404B(1), and show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993); State v. Free, 26,267 (La.App.2d Cir. 9/21/94), 643 So.2d 767, writ denied, 94-2846 (La. 3/10/95), 650 So.2d 1175. Further, the evidence of other crimes must have some independent relevance other than showing that the defendant is a person of bad character and should tend to prove a material fact at issue. State v. Driggers, supra. A trial court's ruling on the admissibility of such evidence will not be overturned absent an abuse of discretion. State v. Lee, 25,917 (La.App.2d Cir. 5/4/94), 637 So.2d 656, writ denied, 94-1451 (La. 10/7/94), 644 So.2d 631.
In the present case, B.C., age fourteen, testified at trial that when she was six years old, defendant persuaded her to enter a vacant house and then asked her to "play doctor." When she refused, defendant had her sit on his lap and placed his hands between her legs on the outside of her clothing, touching her "private parts." B.C. asked him to stop and tried to leave, but defendant would not allow her to go until she promised not to tell anyone about the incident. B.C. later reported the incident to her mother.
Another girl, J.H., age eleven, testified about an incident that occurred when she was four years old. She was outside playing, when a man approached her and asked her to go behind the levee. According to J.H., the man asked if he could "stick his finger in my private," and asked her to feel his "second heartbeat ... in his private." J.H. stated that the man then "took me to a mattress and he told me to take my shirt off. And the cops pulled up and I put my shirt on, and he put me in a hole and the policemen came." J.H. did not remember being touched by the man, whom she could not identify. Her mother, Dena Rice, testified that she contacted the police after discovering her daughter was missing. Ms. Rice stated that J.H. had "fingerprints on her legs from her knees to her private part where she was touched." Officer Patrick Kelly of the West Monroe Police Department testified that he found the defendant and J.H. behind the Ouachita River levee near the river bank. Defendant admitted to Officer Kelly that he sat on the mattress with J.H. in his lap and had thought about fondling her, but did not do so.
The trial court ruled that the evidence of the incident involving B.C. was admissible. This court has previously concluded that the trial court correctly admitted this evidence for the purpose of showing intent and guilty knowledge. B.C. positively identified defendant at trial and described the incident in detail. The evidence showed defendant's intent to molest, fondle or touch young girls and that such touching was not accidental. It had probative value because it tended to confirm the testimony of the victim in the present case. The evidence was also relevant *658 to show defendant's guilty knowledge because, as with the victim in the instant case, he lured or attempted to lure the young girls into secluded areas to perpetrate the offense. We conclude that the trial court did not abuse its discretion in admitting evidence of the incident involving B.C.
Originally, the trial court ruled that the evidence regarding the J.H. incident was inadmissible because she could not identify defendant as the perpetrator. However, finding that such circumstances affected the weight of the evidence and did not render it inadmissible, this court ruled that this evidence was relevant, pertained to a material fact in issue and its probative value outweighed its prejudicial effect. State v. Sturdivant, 27,034-35-KW, supra. At trial, Officer Kelly clearly identified the defendant as the man involved in the incident with J.H. Testimony about this incident was relevant to show a material fact in issue, defendant's intent to commit sex-related acts with young girls under the age of seventeen. Therefore, the probative value of this evidence in showing motive and intent outweigh its prejudicial effect.
The defendant raises several arguments for excluding this evidence. He contends that the difference between the age of the two prior victims at the time of the occurrence, and the current victim's age, means that the incidents are significantly distinguishable. The defendant also points out that the previous offenses occurred in secluded locations without adults present, while the present offense was committed in a public school with several adults nearby. Finally, he argues that the two prior incidents were highly prejudicial because they involved more intimate touching of the girls' genital areas.
We are not persuaded by the defendant's arguments. Although the prior victims were younger in age than the female student in the present case, the evidence demonstrated the defendant's intent to take advantage of pre-pubescent or adolescent girls. The instant offense also occurred in a type of location similar to that of the prior crimes. Despite the fact that other adults were present in the school, defendant touched the victim's buttocks when they were alone in an empty hallway. He had also attempted to lure her to more secluded locations. As illustrated above, in all three instances the defendant discussed sexual activity with the victims prior to making physical contact. Finally, as with the other offenses, the present incident involved touching a girl below the waistline. Considering all of these factors, we find that the trial court properly considered the evidence of other crimes. Therefore, this assignment of error lacks merit.

Sufficiency of the Evidence
Defendant argues that the evidence at trial was insufficient to convict him of indecent behavior with a juvenile. He contends that the allegedly inappropriate conversation with the victim and the touching of her buttocks do not constitute lewd or lascivious conduct.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Mathis, 26,646 (La.App.2d Cir. 1/15/95), 649 So.2d 92; State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.), writ denied, 605 So.2d 1089 (La.1992). To convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant committed a lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, was over the age of seventeen and more than two years older than the victim, and had the specific intent to arouse or gratify either his own or the child's sexual desires. LSA-R.S. 14:81A; State v. Stamper, 615 So.2d 1359 (La.App.2d Cir), modified on other grounds, 624 So.2d 1208 (La.1993).
The word "lewd" means lustful, indecent and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner. The word "lascivious" means tending to incite lust, indecent, obscene and tending to deprave the morals in respect to sexual relations. State v. Holstead, *659 354 So.2d 493 (La.1977). Further, the word "lewd" is identified with obscenity and community norms for morality. Finding that an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. State v. Stamper, supra.
In the Stamper case, the defendant was convicted of three counts of indecent behavior with a juvenile. One count involved an incident where the defendant rubbed the victim's buttocks and watched him shower for approximately forty-five seconds. This court found that such conduct was sufficient to constitute a lewd and lascivious act. In State v. Ragas, 607 So.2d 967 (La.App. 4th Cir. 1992), writ denied, 612 So.2d 97 (La.1993), the defendant was convicted as charged of two counts of attempted molestation of a juvenile. A conviction for molestation of a juvenile also requires proof that defendant committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen. LSA-R.S. 14:81.2. The court reversed the defendant's conviction on one count, deciding that his hugging the victim and kissing her on the neck did not constitute a lewd or lascivious act. However, the court concluded that defendant's behavior justified a finding of lewd and lascivious conduct where the defendant pulled the victim on top of him while lying in bed, hugged and kissed her and touched her breasts and buttocks, even though both were fully clothed.
In the present case, defendant asked the young female victim inappropriate and sexually suggestive questions during a tour of the school building. Subsequently, when the victim's back was turned, the defendant attempted to grab her breasts and then he touched, "lifted up" and "rubbed" her buttocks. As in the above-cited cases, the defendant's conduct was sufficient to constitute a lewd and lascivious act, despite the fact that the victim was fully clothed. This conclusion is further supported by defendant's history of similar behavior with young girls. When viewed in the light most favorable to the prosecution, there is sufficient evidence for a reasonable jury to convict the defendant of indecent behavior with a juvenile. Therefore, this assignment of error is without merit.

Excessive Sentence
The defendant argues that the trial court erred in imposing an excessive sentence and in departing from the recommended sentencing range of the guidelines.[1] He also contends that the trial court improperly failed to consider mitigating factors present.
A trial judge has the discretion to disagree with the sentencing guidelines and choose not to follow them, even in the absence of aggravating or mitigating circumstances. State v. Smith, 93-0402 (La. 07/05/94), 639 So.2d 237; State v. Tumblin, 27, 122 (La.App.2d Cir. 06/21/95), 658 So.2d 222. While a trial judge must consider the guidelines, he has complete discretion to reject them and impose any sentence within the statutory range for the crime of conviction, provided such sentence is not constitutionally excessive. The judge need only state for the record the considerations and factual basis for the imposition of that sentence. State v. Smith, supra; State v. Tumblin, supra; and State v. Tuttle, 26,307-08 (La. App.2d Cir. 09/21/94), 643 So.2d 304.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Thompson, 25,583 (La.App.2d Cir. 01/19/94), 631 So.2d 555. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest *660 abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, supra; State v. Madison, 535 So.2d 1024 (La.App.2d Cir.1988); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
In the present case, after defendant's conviction the trial court conducted a sentencing hearing, during which several witnesses attested to defendant's pedophilic history and other sex-related incidents. Following the hearing, the trial court sentenced defendant to serve seven years at hard labor, the maximum sentence for a conviction of indecent behavior with a juvenile. Prior to imposing sentence, the trial court considered a lengthy pre-sentence investigation (PSI) report, which described defendant's family and educational background and his inability to hold any job for a lengthy period of time, and the sentencing guidelines. The trial judge stated that the guidelines placed defendant in grid cell 5-C, with a recommended sentence range of 36-46 months of incarceration for a typical case. However, he concluded that this case was atypical for several reasons.
The trial judge mentioned the effects of the incident on the young victim, who stated that she missed numerous school days, continued to have unreasonable fears of men and transferred to another school. Based on her statements in the PSI report, the trial judge opined that defendant's conduct had caused serious emotional injury to the girl and would probably profoundly affect her ability to have a normal male-female relationship.
Another factor in the trial court's decision was defendant's lengthy nine-year criminal history, which included the incidents involving B.C. and J.H. mentioned above. Defendant's record also included his January 1992 arrest for indecent behavior with a juvenile after exposing his genitals to a young girl at a K-Mart store. He pled guilty to obscenity and was sentenced to serve two years at hard labor. While on parole in June 1993, and again in January 1994, the defendant was arrested for simple battery after inhaling spray paint and then beating his wife. Both charges were dismissed upon defendant's placement in Northgate Hospital, a psychiatric facility in Pineville, for treatment of inhalant use and pedophilia. Less than three months after his release from the hospital, defendant committed the instant offense. The trial judge noted defendant's refusal to admit guilt for any of the offenses.
The trial court also considered several aggravating circumstances in imposing sentence, including defendant's persistent involvement in similar offenses not considered in his criminal history. The defendant's conduct included fondling a six year old girl, entering his thirteen year old cousin's bedroom during the night wearing only a housecoat and lingering around a local elementary school. The court also found that another aggravating circumstance was defendant's knowledge that the victim's young age made her particularly vulnerable and less capable of resistance. The trial court concluded that the defendant was the most serious and worst offender, and thus deserving of the maximum sentence.
At resentencing, following defendant's guilty plea to the charge of third felony offender, the trial judge reiterated defendant's history of continuously preying on young girls. He stated that under the applicable provision of LSA-R.S. 15:529.1, a third felony offender shall be sentenced to not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. The trial judge adopted by reference the reasons previously articulated at the original sentencing, and imposed upon defendant the maximum sentence of fourteen years at hard labor without benefit of probation or suspension of sentence, with credit for time served. The judge also informed defendant that he was ineligible for parole because of his third felony offender status.
The trial judge was aware of and considered the defendant's background. He heard testimony concerning defendant's longstanding pattern of committing offenses involving sexual contact with young unsuspecting girls. The sentence is within the statutory range for the offense of conviction. Moreover, the sentence imposed is not grossly out of proportion to the seriousness of the offense, nor *661 does it shock the sense of justice. We cannot say the trial court abused its discretion in sentencing this defendant. Therefore, the assigned error is without merit.
We have examined the record for error patent, LSA-C.Cr.P. Art. 920(2), and note that the trial court incorrectly informed defendant that he had "a period of three years from today within which to file an application for post conviction relief...." This is a common error. The three-year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922. Thus, prescription has not yet begun to run. State v. Mock, 602 So.2d 776 (La.App.2d Cir.1992); State v. Gladney, 626 So.2d 778 (La.App.2d Cir.1993). We direct the trial court to send appropriate written notice to defendant within ten days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Mock, supra. No other error patent was found.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, WILLIAMS and STEWART, JJ., and CLARK, J. Pro Tem.
Rehearing denied.
NOTES
[1] Although the Louisiana Sentencing Guidelines were repealed by Acts 1995, No. 942, effective August 15, 1995, they were applicable at the time sentence was imposed in this case.